**CARDWELL et al. v. UNITED STATES.**

No. 11457.

United States District Court,
E. D. Pennsylvania.

Dec. 1, 1952.

Elias Magil, Philip S. Polis, Philadelphia, Pa., for plaintiffs.

G. A. Gleeson, Philadelphia, Pa., for defendant.

GRIM, District Judge.

This is an action against the United States of America brought under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), by Baird Cardwell as father and guardian of James and Donald Cardwell, minor plaintiffs, and by Baird Cardwell in his own right. On the basis of the pleadings and testimony I make the following special findings of fact and conclusions of law.

#### Findings of Fact.

1. On September 13, 1949, at about 4:40 p. m., William McCandless was driving a 1938 Hudson four-door sedan automobile, owned by plaintiff Baird Cardwell, southward in the west lane on 50th Street in Philadelphia and was approaching the intersection of 50th Street and Greenway Avenue. Minor plaintiffs James Cardwell, sitting on the right in the back seat, and Donald Cardwell, sitting on the left in the back seat, were passengers in the automobile.

2. At the same time a mail truck, owned by the defendant, United States of America, and operated by an employee of defendant within the scope of his employment and upon defendant's business, was proceeding westward in the north lane on Greenway Avenue and approaching the intersection of Greenway Avenue and 50th Street.

3. When the automobile reached the north house line of Greenway Avenue, McCandless looked both to his right and left and saw no traffic on Greenway Avenue coming toward the 50th Street intersection. At the north curb line of Greenway Avenue McCandless again looked both to the right and to the left and saw no traffic ap-

proaching. His view to the left was partially blocked by an automobile parked on the north side of Greenway Avenue approximately seventy-five feet east of the intersection. He sounded his horn upon entering the intersection.

4. Defendant's mail truck driver, travelling westward on Greenway Avenue, made no observation of traffic to his right and left on 50th Street as he approached and entered the intersection from the east. He did not see the Cardwell automobile until both the automobile and his truck were already in the intersection. He was driving the truck at an excessive speed under the circumstances. Upon seeing the Cardwell automobile in the intersection, defendant's driver applied the brakes to the truck which skidded approximately eighteen feet, according to the skid marks, and crashed into the left side of the automobile.

5. The front of the truck struck the left side toward the rear of the automobile with such force that the truck's bumper ripped off the left rear door and projected into the back seat, damaging the automobile in the amount of $345.

6. Defendant's employee was negligent in the operation of the mail truck immediately preceding the collision, in that he drove the truck at an excessive speed under the circumstances, failed to take proper cognizance of traffic moving on 50th Street toward its intersection with Greenway Avenue, and failed to have his truck under proper control.

7. The collision of the mail truck with the Cardwell automobile was proximately caused by the negligent operation of the mail truck by defendant's employee. McCandless, the driver of the Cardwell automobile, was not guilty of contributory negligence.

8. As a result of the collision Donald Cardwell, then fifteen years old, was knocked unconscious and was taken to Mercy-Douglass Hospital where he regained consciousness and then lost consciousness for the second time. He was given first aid at the hospital, where he spent two hours, and was then sent home, where he remained in bed for two days.

9. Donald's injuries consisted of a brush burn, five by two and one-half inches, and bruises on the left thigh which developed into a cellulitis and muscle spasm; a concussion of the brain, which resulted in two brief periods of unconsciousness and in headaches; some injury to the lower back resulting in muscle spasm.

10. For about three weeks following the accident, in addition to the pain from the burns, bruises, and muscle spasm in his left thigh and the spasm in his lower back, Donald suffered nausea, some loss of weight, and headaches with pain particularly over the eyes.

11. Donald was first treated on September 15, 1949, by his family physician, Dr. Grahn, who applied salve and bandaged his left thigh, and treated it with short-wave diathermy · (heat). Dr. Grahn referred Donald to Dr. Rankin, an ophthalmologist, who found nothing wrong with his eyes. Donald used crutches for a few weeks following the accident.

12. On October 3, 1949, three weeks after the automobile accident, Donald while playing football was knocked unconscious for four minutes and was taken to Mercy-Douglass Hospital where he remained for three days. (About a year prior to this football injury Donald sustained a similar injury while playing football, lost consciousness, and was hospitalized for one week.) After the October 3, 1949 football accident Donald used crutches for approximately five weeks. He fainted eight or ten times between the time of the automobile accident and the time of the trial, as a result largely of the football injuries sustained after the automobile accident.

13. Up to the date of the trial, April 10, 1952, Donald was still suffering from headaches characterized by pain over the eyes, but decreasing in frequency and intensity. These headaches were in small part the result of the injuries sustained in the automobile accident and in large part the result of the injuries sustained in the football accident three weeks later. These recurrent headaches are not a permanent condition, but will gradually disappear entirely.

14. Donald passed the required physical examination and enlisted in the United States Navy on January 25, 1952.

15. Donald missed two and one-half months of school after the automobile accident. Only two or three weeks of that time can be attributed to the automobile accident, with the remaining lost time chargeable either to the subsequent football accident .or to voluntary absence.

16. Donald failed in his schoolwork two consecutive times after the automobile accident, but his academic failures were in no way connected with the accident. He failed in three courses in school prior to the accident.

17. Dr. Grahn's bill was $97 for the treatment of both Donald's automobile injuries and his subsequent football injuries. However, the entire bill, which was fair and reasonable, can fairly be charged to his automobile injuries alone.

18. As a result of the injuries he sustained in the automobile accident, Donald was unable to serve his newspaper route for three weeks, at a loss of $8 .a week or a total loss of $24. He would have given half of these lost earnings ($12) to his parents.

19. I assess Donald's pain and suffering resulting from the automobile accident to be in the amount of $400.

20. James Cardwell, then thirteen years old, was knocked unconscious in the automobile collision and regained consciousness in Mercy-Douglass Hospital a short time later. His mother took him home the same day and put him to bed where he remained until the following night.

21. James sustained the following injuries: a right parietal contussion, three-fourths by two and one-half inches; a small hematoma about the size of a walnut on the skull (a hematoma of the skull is an egg-shaped blood collection or bump under the scalp) ; a bruise, swelling, and strain of the left wrist; and a wrenched lower back.

22. The hematoma of the skull cleared up by itself within ten days, but James had pain in that part of his head for about six weeks and suffered intermittent headaches for about two months after the accident, during which time it took him longer to do his homework.

23. James' back was tender and its motion was limited and painful for a short period of time. For several weeks his wrist remained swollen and was pained by any type of motion.

24. Dr. Grahn, who first treated James two days after the accident, dressed and redressed his wrist several times, and administered twenty-three short-wave diathermy (heat) treatments to his wrist and lower back. Dr. Grahn dressed the wrist for the last time about five weeks after the accident.

25. The only permanent effect of James' injuries is a small mass or fullness in the left wrist, which has not appreciably impaired the strength, mobility, or usefulness of the wrist.

26. I assess the pain and suffering incurred by James as a result of the aforesaid injuries to his wrist, head, and back to be in the amount of $500.

27. Dr. Grahn's bill for the treatment of James' automobile injuries was $76, which was fair and reasonable.

28. As a result of the injuries he sustained in the automobile accident, James was unable to serve his newspaper route for four weeks, at a loss of $6.50 a week or a total loss of $26. He would have given most of this amount to his parents and kept the rest for lunch money.

29. The parent plaintiff, Baird Cardwell, in his own right, has sustained the following losses: damage to his automobile in the amount of $345; doctor's bills for the treatment of Donald's and James' injuries in the amount of $173; loss of contributions of earnings from Donald and James in the amount of $38; or a total of $556.

Conclusions of Law.

1. This court has jurisdiction over the parties and the subject matter of this action. 28 U.S.C. § 1346(b).

2. The accident and resultant injuries to plaintiffs were proximately caused by the negligent operation of defendant's mail truck by its employee within the scope of his employment.

3. Plaintiffs were not contributorily negligent.

4. Defendant is liable to plaintiff Baird Cardwell, in his own right, in the amount of $556.

5. Defendant is liable to minor plaintiff Donald Cardwell in the amount of $412.

6. Defendant is liable to minor plaintiff James Cardwell in the amount of $500.

7. Plaintiffs are entitled to judgments against defendant in the above amounts, with costs.